GLICKSTEIN, Judge,
dissenting:
I respectfully dissent.
The designated trustees of Net Realty Holding Trust timely appeal from a final judgment awarding them $2,719.00 as back rent and $430.42 in interest. The trustees unsuccessfully sought to recover $14,736.93 in rent and $845.00 in prorated taxes from their tenant, Floridus Enterprises, Inc., and from Steven Mohler and William J. Smith, the guarantors of the lease in question. The term of the lease was from November 1, 1973, through October 31, 1978. The trustees claim they are due rent from January, 1976, through the balance of the term, less a period in which the premises were occupied by a third party. Although it is not clear how the trial court arrived at the figure of $2,719.00 for back rent, recovery was undoubtedly allowed for a portion of 1976.
Testimony was uncontradicted that Flori-dus’ retail business began to decline in 1975, and the two operators-Messrs. Mohler and Smith-began to look for possible purchasers of the business. In late March of 1976 a prospective buyer, Mr. Stewart, executed a contract to purchase the business for $2,000 with a deposit of $200.
Any sale necessitated a new lease between the purchaser and Net Realty Holding Trust, or alternatively, an assignment of sub-lease with Floridus. Any assignment of sub-lease was subject to paragraph 20 of the lease which provided:
Lessee agrees not to sell, assign, mortgage, pledge, or in any manner transfer this lease or any estate or interest thereunder and not to sub-let the leased premises or any part or parts thereof and not to permit any licensee or concessionaire therein without the previous written consent of Lessor in each instance. Consent by Lessor to one assignment of this lease or to one sub-letting of the leased premises shall not be a waiver of Lessor’s rights under this Article as to any subsequent assignment or sub-letting. Lessor’s rights to assign this lease are and shall remain unqualified.
In addition, Lessee shall not allow or permit any transfer of this lease or any interest under it or any lien upon Lessee’s interest by operation of law without first obtaining written consent from Lessor, and any such transfer, lien, assignment or subletting not so consented to by Lessor, at Lessor’s option shall be invalid and of no force or effect whatsoever.
Any such sub-leasing or assignment, even with the approval of the Lessor, shall not be for less rent than the minimum rent payable hereunder at the time of such subletting, (any rent, charges, fees or sums of any nature whatsoever payable by any such sub-lessee or assign-ee to Lessee on account of such sub-leasing or assignment in excess of the rent and charges reserved in this lease shall be paid to Lessor upon demand) nor shall Lessee be relieved from liability for payment of the rental herein provided or from the obligation herein provided or *272 from the obligation to keep and be bound by the terms, conditions and covenants of this lease. The acceptance of rent from any other person shall not be deemed to have waived any of the provisions of this Article or to be a consent to the assignment of this lease or sub-letting of the demised premises.
As can be seen, the lease required the written consent of the lessor, without any qualifying language which would have imposed upon the lessor the obligation that consent not be unreasonably withheld.
Mr. Stewart testified that he attempted several times to reach Mr. Weston, the lessor’s representative, and when finally reached Mr. Weston stated that the original parties would not be released from the lease. After two months of attempting unsuccessfully to obtain the lessor’s consent to assign, Stewart gave up and decided not to purchase the business.
It is uneontradicted that no rent was paid by Floridus for any part of 1976. When Mr. Stewart entered the picture, the tenant’s rent was three months in arrears. The testimony reflects that the lessor had a standard policy of consenting to assignment conditioned upon actual payment to the lessor of past due rent. There is testimony that a representative of the lessor communicated to the parties that the past due rent had to be made current before any assignment could be made. At the time of these communications there was no tender by the original tenant or the guarantors of the past due rent. Mr. Stewart had only deposited $200 in escrow with the real estate office handling the transaction.[1]
This case represents an unfortunate set of facts in that a concerted effort was made by the guarantors and the prospective purchaser to obtain the lessor’s consent to assignment and eliminate any dispute between the parties. However, no such amicable resolution did occur and I am left with the cold facts of commercial life. Flo-ridus and the guarantors were in default by failing to pay the rent. Whether they were financially unable to put the rent in a current framework or whether, in their judgment they were afraid of pouring good money after bad, I shall never know. The point remains that they had the duty of eliminating the arrearage, and their failure to do so was, in my eyes, the primary cause of the parties’ failure to obtain the lessor’s consent to the subject assignment.
Whether the conduct of the lessor’s representative was reasonable is not an issue because in my judgment when a lease requires the consent of the lessor to any assignment and the lease does not contain limiting language requiring a reasonable withholding thereof, the lessor may refuse or decline to give such consent for any or no reason.
I would hold that the trustees were entitled to damages for the unexpired portion of the lease, together with any arrearage, less any rents obtained from other parties between January 1, 1976, and October 31, 1978.

. The prospective purchaser testified he had been willing to meet the lessor’s conditions, including the demand to pay the back rent, provided he was given a definite answer as to whether assignment would be permitted. A definite answer was never given.